UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jerome Byrd, et al,                    :    Case No. 1:09-cv-076
                                       :
        Plaintiffs,                    :
                                       :
vs.                                    :
                                       :
Law Offices of John D. Clunk           :
Co., LPA, et al,                       :
                                       :
        Defendants.                    :

**ORDER**

Plaintiffs Jerome and Carolyn Byrd filed an amended
complaint (for themselves and a putative class) against several
Defendants, alleging they each violated the Fair Debt Collection
Practices Act. (Doc. 12) All Defendants now move for summary
judgment on Plaintiffs' claims.

**FACTUAL BACKGROUND**

According to Plaintiffs' amended complaint, in October 2007
Jerome and Carolyn Byrd defaulted on their home loan with
Accredited Home Lenders, Inc. The loan was secured by a mortgage
on their home at 9596 Creekhill Road in Cincinnati. On February
13, 2008, a foreclosure action was filed by Defendant HSBC
Mortgage Services, Inc. ("HMSI"). Plaintiffs allege that HMSI
did not own the loan when that action was filed. Defendant, Law
Offices of John D. Clunk ("Clunk"), represented HMSI in the
mortgage foreclosure action, and an attorney from that office

-1-

signed and filed the complaint. (Doc. 49, Exhibit H)

Plaintiffs further allege that, contrary to Ohio law, the Defendants did not seek the appointment by the trial court of a non-sheriff process server in the foreclosure action. They allege that despite the issuance of certified mail service of the summons and complaint by the state court clerk,

> ... Defendants carried out efforts to collect the debt through extra-judicial means. On February 16, 2008, Defendants dispatched a representative to the Byrds' residence for purposes of harassment, false representation, or the use of unfair practices. Defendants posted a notice on the front door of the Byrds' residence, stating as follows:

### POSTED

This 16 day of February, 2008 at 11 AM
NOTICE: I have attempted to contact you on Official Court Business Please contact Marshall as soon as possible at (phone number omitted) so we can make arrangements.

**FAILURE TO RESPOND TO THIS NOTICE MAY RESULT
IN AN AFFIDAVIT OF AVOIDANCE OF SERVICE BEING
FILED AGAINST YOU AND/OR SERVICE OF NOTICE TO
BE MADE BY PUBLICATION IN A NEWSPAPER OF
GENERAL CIRCULATION IN THE COUNTY IN WHICH
THE COMPLAINT IS FILED**

(Doc. 12, ¶11)

Discovery in this case has established that Martez Marshall, a licensed private investigator who also occasionally works as a process server for Defendant ProVest, actually delivered this

"Notice" to the Byrds' residence. ProVest's principal business is service of process or other legal notices, and it is licensed to do business in Ohio. ProVest created the "Notice" for use by its process servers. The Hamilton County Common Pleas Court entered a Standing Order appointing ProVest as an authorized process server in that county, prior to the events giving rise to this lawsuit. (Doc. 48, Exhibit B)

Plaintiffs allege that each of the Defendants knew that Plaintiffs were not required to respond to this "Notice," and that the person who delivered it was not a court representative nor on "Official Court Business." Each Defendant also allegedly knew that there is no such thing as an "Affidavit of Avoidance of Service" as stated in the notice. (Id. ¶12)

Plaintiffs allege that each of the Defendants is a debt collector, as defined by the FDCPA, and that each Defendant violated several sections of that statute by delivering the "Notice" to them.

**DISCUSSION**

<u>Standard of Review</u>

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

-3-

judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and

-4-

determine the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. The court must assess whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... , the court may grant judgment." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir. 1979), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (citations omitted).

<u>The Fair Debt Collection Practices Act</u>

Congress enacted this statute "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses." 15 U.S.C. §1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or de minimis violation. See <u>Frey v. Gangwish</u>, 970 F.2d 1516, 1521 (6th Cir. 1992).

However, the Sixth Circuit has also cautioned that it will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." <u>FHLMC v. Lamar</u>, 503 F.3d 504, 514 (6th Cir. 2007), quoting <u>Jacobson v. Healthcare Fin. Servs., Inc.</u>, 434 F.Supp.2d 133, 138 (E.D.N.Y. 2006). The Court must apply the "least sophisticated consumer" test to objectively determine whether a challenged practice violates the statute. <u>Smith v. Transworld Systems, Inc.</u>, 953 F.2d 1025, 1029 (6th Cir. 1992).

<u>ProVest's Motion for Summary Judgment (Doc. 48)</u>

ProVest offers several arguments in support of its motion for summary judgment. ProVest contends that Plaintiffs' claims are untimely under the FDCPA's one-year statute of limitations, 15 U.S.C. §1692k(d). ProVest was first named a defendant in this case in Plaintiffs' amended complaint filed on June 8, 2009, and the "Notice" giving rise to Plaintiffs' claims was delivered to Plaintiffs on February 16, 2008. ProVest also argues that it was never properly served with the amended complaint; that it is not a "debt collector" for FDCPA purposes; and that the "Notice" does

collection abuses." 15 U.S.C. §1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or de minimis violation. See <u>Frey v. Gangwish</u>, 970 F.2d 1516, 1521 (6th Cir. 1992).

However, the Sixth Circuit has also cautioned that it will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." <u>FHLMC v. Lamar</u>, 503 F.3d 504, 514 (6th Cir. 2007), quoting <u>Jacobson v. Healthcare Fin. Servs., Inc.</u>, 434 F.Supp.2d 133, 138 (E.D.N.Y. 2006). The Court must apply the "least sophisticated consumer" test to objectively determine whether a challenged practice violates the statute. <u>Smith v. Transworld Systems, Inc.</u>, 953 F.2d 1025, 1029 (6th Cir. 1992).

<u>ProVest's Motion for Summary Judgment (Doc. 48)</u>

ProVest offers several arguments in support of its motion for summary judgment. ProVest contends that Plaintiffs' claims are untimely under the FDCPA's one-year statute of limitations, 15 U.S.C. §1692k(d). ProVest was first named a defendant in this case in Plaintiffs' amended complaint filed on June 8, 2009, and the "Notice" giving rise to Plaintiffs' claims was delivered to Plaintiffs on February 16, 2008. ProVest also argues that it was never properly served with the amended complaint; that it is not a "debt collector" for FDCPA purposes; and that the "Notice" does

not violate any provision of the FDCPA.

Plaintiffs do not dispute that the FDCPA includes a one-year statute of limitations that begins to run on the date of the alleged violation. The only violation alleged here is the delivery of the "Notice" on February 16, 2008. Plaintiffs' original complaint named only two defendants, HMSI and Clunk, and did not allege the existence of any "Doe" or unknown defendants. It is settled Sixth Circuit precedent that "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." Asher v. Unarco Material Handlings, Inc., ___ F.3d ___ (6th Cir. March 3, 2010), slip op. at p. 6 (quoting In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449 (6th Cir. 1991)).

Plaintiffs respond that they had no suspicion of any involvement by ProVest from the "Notice" itself, or at any time before they filed their original complaint on February 2, 2009. They claim that nothing that was delivered to them concerning the foreclosure lawsuit suggested that ProVest was involved. Plaintiffs' counsel filed an affidavit stating that her first knowledge of ProVest's involvement came during the May 26, 2009 Rule 26(f) conference, when Defendants' counsel suggested that ProVest might be a necessary party. Plaintiffs thereafter sought leave to amend their complaint. Plaintiffs argue that the one-

year statute should be equitably tolled and that the "discovery rule" should apply to extend the statute of limitations.

The Supreme Court has noted that equitable tolling in suits between private litigants is permissible "... where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." Irwin v. Dept of Veterans Affairs, 498 U.S. 89, 96 (1990) (internal footnotes and citations omitted). A party seeking to rely on the equitable tolling doctrine bears the burden of proving its applicability. See McClendon v. Sherman, 329 F.3d 490, 494 (6th Cir. 2003).

To this Court's knowledge, the Sixth Circuit has never addressed the question of whether equitable tolling applies to FDCPA claims. Plaintiffs cite Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783 (S.D. Ohio 2006), where the district court permitted equitable tolling of FDCPA claims. Foster cited Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037 (6th Cir. 1984), which affirmed application of equitable tolling to Federal Truth in Lending claims. Both of those cases involved fraudulent misrepresentations and/or fraudulent concealment by a defendant.

-8-

In <u>Foster</u>, for example, a debt collection agency filed complaints in its own name, not the name of the actual creditors, and the agency was not properly registered in Ohio.  The district court rejected the agency's argument that any claim based upon its conduct occurring more than a year prior to the filing of plaintiffs' complaint was barred, because the defendant had not established when any class member discovered or should have discovered the agency's fraudulent misrepresentations made in its state collection lawsuits.  Here, Plaintiffs do not allege or even suggest that any of the Defendants acted fraudulently, or misrepresented anything to them that led them to sleep on their rights.  A district court in this circuit recently rejected the application of equitable tolling in an FDCPA case for similar reasons.  See <u>Ruth v. Unifund CCR Partners</u>, 2009 U.S. Dist. LEXIS 17362 (N.D. Ohio, March 6, 2009).

Moreover, assuming that equitable tolling would apply in the absence of any fraudulent concealment, Plaintiffs must make some reasonable showing of their diligence in discovering their claim. This they have failed to do.  Plaintiffs simply claim that the "Notice" did not have ProVest's name on it, and there was nothing else in the papers served upon them that suggested ProVest's involvement.  But that fact does not excuse further efforts to discover the identity of potential defendants.  The praecipe for service in the underlying foreclosure action specifically

requested personal and/or residential service upon Plaintiffs by ProVest. The state court docket sheet lists summons issued "by process server" to Plaintiffs on February 15, 2008, and a return of service by process server on both plaintiffs was filed on February 27, 2008. All of this information was easily obtained from the publicly-available court file.

In addition, attorney Timothy Brick, who represents the Clunk firm, filed an affidavit and attached a March 20, 2009 letter he sent to Plaintiffs' counsel as a "follow-up to our recent conversation" about Plaintiffs' FDCPA complaint. In the letter, Mr. Brick informs Plaintiffs' counsel that the Clunk firm retained ProVest to serve the foreclosure complaint, that ProVest was authorized to serve process in Hamilton County, and that ProVest was an independent contractor retained by the Clunk firm. Brick suggests that to the extent Plaintiffs claim the "Notice" violates the FDCPA, they should pursue a claim against ProVest. (Doc. 51, Exhibit 1) Plaintiffs' counsel is therefore mistaken in stating that she had no knowledge of ProVest until late May of 2009.

Even assuming that Plaintiffs' claims against ProVest were timely, the FDCPA includes an exception from the definition of "debt collector" for anyone "while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt, ...". 15 U.S.C. §1692a(6)(D). ProVest

argues it is not subject to the FDCPA due to this exception, but Plaintiffs disagree. They argue that ProVest was not acting as a process server, but that it "prepared the communication that was served on the consumer," citing <u>Romea v. Heiberger & Assoc.</u>, 163 F.3d 111, 117 (2nd Cir. 1998). <u>Romea</u> involves significantly different facts. The attorney-defendant in that case prepared and served on plaintiff a three-day notice of past due rent, a statutory condition precedent to a summary eviction action under New York law. The attorney argued that the three-day notice was not a "communication" about a debt under the FDCPA, and that his actions regarding the notice were simply serving legal process. The Second Circuit rejected both arguments, finding that the notice (demanding payment of back rent in order to forestall summary eviction) was clearly a communication about a debt, and that it was not "legal process" within the terms of the exemption.

In contrast, several recent cases have found that true process servers are not covered by the FDCPA. See <u>Worch v. Wolpoff & Abramson, LLP</u>, 477 F.Supp.2d 1020 (E.D. Mo. 2007), granting summary judgment to a private process server for his actions in attempting to serve a filed arbitration claim on plaintiff. The district court rejected plaintiffs' arguments that the process server was "indirectly" attempting to collect a debt by demanding plaintiffs' telephone number, asking questions

about who lived in the house and whose car was in the driveway, and his statement that the debtor "needs to take care of this" when he served the arbitration claim.  In a companion order, the court found that because the process server was not a debt collector, no vicarious liability for his actions could be imposed against the law firm that filed the arbitration demand on behalf of its client.  <u>Worch v. Wolpoff & Abramson, LLP</u>, 447 F.Supp.2d 1015 (E.D. Mo. 2007).

And in <u>FHLMC v. Lamar</u>, 2006 U.S. Dist. LEXIS 59249 (N.D. Ohio, August 22, 2006), plaintiff alleged that a process server attempted to serve her at work, that he did not identify himself as a process server, that he followed her as she left the parking lot after work, attempted to approach her car while she was stopped in traffic, chased her and followed her into a local police station parking lot, and damaged her windshield wiper while jamming papers under it.  The district court found that the process server was not a debt collector under the FDCPA and could not be liable to plaintiff.  It also found that the law firm that retained the process server to personally serve plaintiff with the foreclosure complaint could not be vicariously liable for the server's conduct because he was an independent contractor over whom the law firm exercised no control.

Plaintiffs argue that ProVest is not a "process server" because it was not designated as such by any order of the court

-12-

as required by O.R.C. 311.22.  Plaintiffs ignore the fact that
ProVest was appointed by the Hamilton County Common Pleas court
as an official process server by **standing** order.  (See Doc. 48,
Exhibit B.)  They also contend that the "Notice" itself is not
"legal process," which removes ProVest from the exception for
"process servers."  But that is irrelevant to the language in the
statute; it excepts from the Act's coverage anyone who is serving
or attempting to serve legal process.  Plaintiffs do not dispute
that the summons and foreclosure complaint were legal process,
and they have not genuinely disputed the fact that ProVest's
process server perfected service of the foreclosure complaint on
the Plaintiffs.

Finally, ProVest argues that nothing in the "Notice"
violates the FDCPA.  Plaintiffs disagree, arguing that the
"threat" to file "an affidavit of avoidance of service" or to
publish notice of the foreclosure lawsuit, are threats to take
actions that cannot legally be taken, violating 15 U.S.C.
§1692e(5).  They also argue that the "Notice" was intended to
harass them, violating Section 1692d (prohibiting conduct of
which a natural consequence is harassment, oppression, or abuse).

The Court must evaluate an FDCPA claim through the lens of
the least sophisticated consumer, as the statute "protects all
consumers, the gullible as well as the shrewd." <u>Gionis v.
Javitch, Block & Rathbone</u>, 238 Fed. Appx. 24, 28 (6th Cir. June

6, 2007)(internal citation omitted).  The test is premised on the assumption that "consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes...", but also protects debt collectors against bizarre or idiosyncratic interpretations of collection notices.  Id.  In Gionis, the affidavit attached to a debt collection complaint alleged a right to recover attorney's fees "to the extent permitted by applicable law."  Ohio law forbids recovery of such fees for collection of any personal, family, or household debt.  The Sixth Circuit found that the claim made to recover attorney's fees was an act that could not legally be taken in Ohio, and thus a violation of the FDCPA.

Here, unlike Gionis and contrary to Plaintiffs' arguments, the "Notice" does not threaten illegal action, and it makes absolutely no reference to a debt.  The notice states that a failure to respond to service may result in an affidavit being filed stating that Plaintiffs are avoiding service.  It also states that publication notice may be published if there is no response to the process served.  There is nothing illegal about these statements.  Plaintiffs who attempt to evade service of process may be served by alternate methods, including publication, under O.R.C. 2703.14(L).  An affidavit is a legal method by which to present facts suggesting that a plaintiff is evading service.  And the reference to "Official Court Business"

-14-

is not deceptive, misleading, abusive, or harassing.  ProVest is
a court-authorized process server, and the "Notice" was posted in
connection with securing personal service of process of the
foreclosure complaint.  Even the least sophisticated consumer
could not colorably establish that the "Notice" amounts to a
prohibited attempt to collect a debt.

Finally, the Court rejects Plaintiffs' reliance on Section
1692j(a), making it unlawful "to design, compile, and furnish any
form knowing that such form would be used to create the false
belief in a consumer that a person other than the creditor" is
collecting or attempting to collect a debt.  As Defendants
rightly argue, this section of the FDCPA is directed at the
practice known as "flat-rating," selling quantities of letterhead
or other official-looking documents to a creditor to use in
collecting debts, leading a debtor to believe that the person or
firm identified in the letterhead is actually involved in the
collection effort.  See, e.g., <u>Gutierrez v. AT&T Broadband, LLC</u>,
382 F.3d 725, 734 (7th Cir. 2004), describing this practice.
Plaintiffs have not disputed the fact that ProVest itself created
and used the "Notice."  The Court also notes that Plaintiffs have
specifically argued that they had **no** belief that anyone other
than HMSI and the Clunk firm were "attempting to collect" the
debt.  Since they had no "false belief" that anyone other than
their creditor and its attorney were involved, this section does

not apply.

For these reasons, ProVest is entitled to summary judgment on Plaintiffs' claims. The Court need not address ProVest's argument concerning improper service of the complaint.

The Clunk Firm's Motion for Summary Judgment (Doc. 23)

The Clunk firm argues that it cannot be vicariously liable for ProVest's actions because ProVest was an independent contractor retained by Clunk merely to serve legal process. The Clunk firm submits the affidavit of Attorney Charles Gasior of that firm, who signed the foreclosure complaint and who retained ProVest to serve that complaint upon the Byrds. Attached to his affidavit is the Praecipe for Service submitted to the state common pleas court with the foreclosure complaint, requesting service both by certified mail, and by private process server (specifically naming ProVest) for personal and/or residential service on the Byrds. (Doc. 23, Exhibit 2) Attorney Gasior declares that neither he nor anyone in his firm had any knowledge of the "Notice" that ProVest's process server left with the Byrds, nor of any prior occasions in which ProVest had used the "Notice" in connection with any service of process requested by the firm. (Doc. 23, Exhibit 1)

Under Ohio law, an employer or principal is not liable for the negligence of an independent contractor over which it had no right to control the manner of performing the work. See, e.g.,

<u>Clark v. Southview Hospital & Family Health Center</u>, 68 Ohio St.3d 435, 438 (Ohio 1994).  Clunk also relies on <u>FHLMC v. Lamar</u>, 2006 U.S. Dist. LEXIS 59249 (N.D. Ohio, August 22, 2006), discussed above, where the district court found that the law firm was not vicariously liable for the actions of the independent contractor process server retained to personally serve plaintiff with a complaint.  Clunk argues the same result should be reached here.

Plaintiffs respond that nothing in the communications that were delivered to them suggested ProVest's involvement.  They argue that the foreclosure complaint which was served with the "Notice" identified HMSI as the plaintiff and Clunk as HMSI's lawyer.  Thus, they argue that they "were led to believe" that HMSI and Clunk were "making threats" against them.  (Doc. 49 at p. 10.)  Plaintiffs also contend that a debt collector may be vicariously liable for the conduct of another acting on its behalf, citing <u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379 (3rd Cir. 2000), and <u>Fox v. Citicorp Credit Services, Inc.</u>, 15 F.3d 1507 (9th Cir. 1994).

Plaintiffs' allegation that they "were led to believe" that Clunk or HMSI authored the "Notice" is insufficient to satisfy Plaintiffs' burden in responding to a Rule 56 motion.  Plaintiffs must come forward with some admissible evidence demonstrating a genuine dispute of fact.  Plaintiffs have not disputed the affidavit submitted by Attorney Gasior.  Plaintiffs have not

disputed the fact that the Clunk firm retained ProVest only to accomplish service of the complaint, and that the firm had no prior knowledge of the existence or contents of the "Notice." Nor have they contested the evidence establishing that it was ProVest that authored the disputed "Notice" and provided it to their process server Martez Marshall. In fact, Plaintiffs have submitted an affidavit from Mr. Marshall stating that he left the "Notice" pursuant to instructions from ProVest.

Plaintiffs' reliance on <u>Pollice</u> and <u>Fox</u> is also misplaced. <u>Pollice</u> involved FDCPA claims against NTF, a limited partnership that purchased delinquent water, sewer and property tax assessments from localities. The locality then contracted with another related limited partnership, CARC, to actually collect the debts. (CARC and NTF had a common general partner, and NTF had no employees.) The Third Circuit found that both NTF and CARC were "debt collectors" under the FDCPA, and therefore NTF could be vicariously liable for CARC's violations. The Third Circuit noted <u>Waddington v. Credit Acceptance Corp</u>., 76 F.3d 103 (6th Cir. 1996), which concluded that a client of an attorney could not be vicariously liable for the attorney's FDCPA violation unless both the attorney and the client were debt collectors under the statute. The Sixth Circuit concluded that it would not be consistent with the statute to hold a company that is *not* a debt collector variously liable for the violations

of its attorney, who was a debt collector.  In <u>Pollice</u>, however,
since both NTF and CARC were debt collectors, the Third Circuit
concluded that vicarious liability could be imposed.  And in <u>Fox</u>
<u>v. Citicorp Credit Services</u>, 15 F.3d at 1516, the issue was
whether a debt collector could be vicariously liable for its
attorney's incorrect venue decision under 15 U.S.C. §1692i, a
situation not directly analogous here.  In that case, moreover,
both the defendant and its attorney were "debt collectors" within
the FDCPA.

Waddington clearly supports Clunk's arguments.  Clunk does
not dispute that it is a debt collector for FDCPA purposes.
However, the Court has already found that ProVest is not a debt
collector and is not subject to the FDCPA.  The Clunk firm cannot
be vicariously liable for ProVest's "Notice" under the reasoning
of <u>Waddington</u>.  The Court also agrees with <u>Lamar</u>'s application of
Ohio law on the question of independent contractor liability.
Common law agency principles underlie any vicarious liability
that may exist for FDCPA violations.  Plaintiffs have no evidence
disputing the fact that ProVest was an independent contractor,
that Clunk had no notice or knowledge of the "Notice," and
exercised no direction or control over ProVest's conduct.

For all of these reasons, the Court therefore finds that
Clunk is entitled to judgment on Plaintiffs' claims.
<u>HMSI's Motion for Summary Judgment (Doc. 21)</u>

HMSI argues that it is not a debt collector for purposes of the FDCPA, and that it cannot be vicariously liable for ProVest's actions as an independent contractor of Clunk, HMSI's outside legal counsel. HMSI also argues that the "Notice" is not false or deceptive, was not an attempt to collect a debt, and did not create a false impression that someone other than HMSI, the plaintiff in the foreclosure complaint, was attempting to collect the debt.

HMSI submits an affidavit of Scott Whitney, Vice President of HMSI's Default Services. (Doc. 22)  Whitney states that HMSI entered into a Continuing Loan Purchase Agreement with Accredited Home Lenders in February 1998, under which HMSI regularly purchased mortgage loans from Accredited. One condition of any purchase was Accredited's warranty that none of the loans were in default. In July 2006, HMSI agreed to purchase the Byrd loan from Accredited, and the settlement date for that purchase was July 28, 2006. Section 2.3(a) of the Continuing Loan Purchase Agreement provides that HMSI takes all of Accredited's right, title and interest in and to any purchased loan as of the settlement date. At the time of this purchase, by Plaintiffs' own admission, the Byrd loan was not in default. In October 2007, the Byrds stopped paying and defaulted on the loan, and HMSI retained the Clunk firm to prosecute a foreclosure complaint against the Byrds.

In response to this evidence, Plaintiffs argue that HMSI "did not own the debt" in February 2008. (Doc. 49 p. 2) They heavily rely on the fact that the formal assignment of the mortgage from Accredited to HMSI was recorded on February 28, 2008, after the foreclosure complaint was filed. This fact does not contradict HMSI's evidence that it owned the loan, and therefore was the Byrds' creditor and not a "debt collector" for purposes of the FDCPA. Moreover, Ohio law does not require that an assignment of a mortgage be recorded before a foreclosure complaint is filed, so long as that assignment is filed before judgment is entered. See Bank of N.Y. v. Stuart, 2007 Ohio 1483 (Ohio 9th Dist. App., March 30, 2007); Wells Fargo Bank, N.A. v. Stovall, 2010 Ohio 236 (Ohio 8th Dist. App., January 28, 2010). HMSI owned the Byrd loan, and recorded the assignment of mortgage before the default judgment was entered against the Byrds.

In addition, two recent cases have held that the recording of the mortgage assignment after filing a foreclosure case is not a deceptive, misleading or abusive practice that violates the FDCPA. See Whittiker v. Deutsche Bank Nat'l Trust Co., 605 F.Supp.2d 914, 930-931 (N.D. Ohio 2009); Shivone v. Washington Mut. Bank, 2008 U.S. Dist. LEXIS 59211 (E.D. Pa., August 5, 2008) [filing a mortgage foreclosure complaint on behalf of a lender in the process of obtaining the fully documented assignment is not an FDCPA violation]. This Court agrees with the conclusions

reached in both of these cases.

Jerome Byrd's affidavit filed with Plaintiffs' response brief asserts that his "communications regarding our mortgage note and our default on that note were with representatives of Accredited Home Lenders." (Doc. 49, Exhibit A ¶3) Byrd does not describe these "communications" nor provide the dates of any such communications. HMSI has submitted a November 20, 2007 letter addressed to HMSI from Plaintiffs' counsel, asking for assistance in negotiating a solution to the Byrds' default. (Doc. 54, Exhibit 1 to Ginsburg Affidavit.) Attached to that letter was an IRS Form 1098 for tax year 2006 to the Byrds from HMSI, stating the amount of mortgage interest the Byrds paid to HMSI during that year. Clearly the Byrds knew that they were paying interest to HMSI prior to their loan default. Mr. Byrd's affidavit does not establish a genuine dispute of fact on this issue.

HMSI was not a "debt collector" as defined by 15 U.S.C. §1692a, as it was attempting to collect its own debt when it filed the foreclosure complaint. It cannot be vicariously liable for any conduct by ProVest or Clunk. HMSI is therefore entitled to entry of judgment on Plaintiffs' claims.

### CONCLUSION

For all of the foregoing reasons, the Court concludes that each of the pending motions for summary judgment are meritorious and should be granted. The motions of ProVest (Doc. 48), the

-22-

Clunk Law Firm (Doc. 23), and of HMSI (Doc. 21) are each granted.

Plaintiffs' claims against each of these Defendants are dismissed

with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 8, 2010        s/Sandra S. Beckwith
                            Sandra S. Beckwith
                            Senior United States District Judge